## 30478. CARRINDINE v. RICKETTS.

INGRAM, Justice.

This court granted appellant's application for leave to appeal a judgment remanding him to custody in a habeas corpus proceeding from Butts Superior Court. The issues involved are complex and are of first impression in Georgia. For these reasons, a detailed statement of the genesis and evolution of appellant's involvement with the courts and institutional systems of the state is necessary for a complete understanding of the issues to be decided in this appeal.[1]

Appellant was under 17 years of age when he was tried on April 19, 1974, before a jury in the Superior Court of Turner County under an indictment for murder. The jury convicted him of voluntary manslaughter and gave him a sentence of two years in prison. The trial judge orally imposed the 2-year sentence from the bench, but never reduced it to written form. Appellant was returned to the county jail from the courtroom to await transportation to a state prison. However, on May 7, 1974, the trial judge entered an order committing appellant to the Georgia Department of Human Resources "for care, supervision and planning as provided for in the Children and Youth Act." Pursuant to this order, appellant was transferred to the Youth Development Center at Milledgeville, Georgia. No appeal was taken from these proceedings in Turner Superior Court.

In November, 1974, after appellant became 17 years of age, the officials at the Milledgeville institution wrote to the trial judge and informed him that they could no longer retain custody of appellant because he had reached age 17. The Milledgeville officials requested the trial judge to make some further disposition of appellant under Ga. L. 1969, pp. 996, 997 (Code Ann. § 99-222). On December 11, 1974, the trial judge entered an order, in appellant's absence without a hearing and without counsel, transferring appellant "to the Youthful Offender

---

[1]For appeals in related cases, see *Patton  v. Ricketts,* 236 Ga. 293, *Allen v. Ricketts,* 236 Ga. 294.

Division of the State Board of Corrections to be dealt with as provided by the Georgia Youthful Offender Act of 1972 (Ga. L. 1972, p. 592)." Pursuant to this order, appellant was placed in a penal institution of the state where his sentence is being computed as an indeterminate sentence of potentially six years. Appellant, through counsel, then filed a petition for habeas corpus seeking relief from the penal custody of the state upon due process and double jeopardy grounds. The habeas trial court denied relief to appellant and the present appeal followed after application to this court.

Appellant contends the habeas trial court erred in holding that the original trial judge could transfer appellant to a penal institution by its order of December 11, 1974, without observing minimal procedural due process requirements of notice, hearing, and appellant's presence with counsel. Appellant also urges that it was unlawful to impose this subsequent penal sentence upon him after his previous commitment to the Department of Human Resources as a juvenile. The argument is made that appellant's commitment to the Youth Development Center amounted to a civil adjudication of delinquency and could not lawfully be changed into a penal sentence for a felony conviction after appellant reached age 17. The state's reply to appellant's argument is that although a commitment by a juvenile court is a civil adjudication of delinquency, appellant was tried in superior court and convicted of a crime.

We are presented here with a criminal conviction followed by a commitment order to a juvenile institution. Consequently, we must first examine the nature of a commitment order entered after the trial and conviction of a juvenile for a non-capital felony in the superior court. Under Georgia law, when a juvenile is adjudicated to be a delinquent by a juvenile court, the adjudication is not regarded as a criminal conviction. See Code Ann. § 24A-2401 and *A. B. W. v. State of Ga.,* 231 Ga. 699 (203 SE2d 512) (1974). This is true even though the act proscribed may form the basis for a criminal conviction as well as for an adjudication of delinquency. A delinquent could have been committed to a correctional institution for rehabilitation if the juvenile facilities were inappropriate

for that child. See *A. B. W.*, supra. However, assignment of the juvenile to a correctional facility was still for the purpose of rehabilitation and treatment. See also Long v. Powell, 388 F Supp. 422 (N. D. Ga., 1975). [1(a)]

A majority of this court has held that under Georgia law, juvenile courts have exclusive original jurisdiction over juveniles alleged to be delinquent for acts which do not constitute capital crimes. See *J. W. A. v. State of Ga.*, 233 Ga. 683, 686 (212 SE2d 849) (1975). The juvenile court has only concurrent jurisdiction with the superior court over a juvenile who is alleged to have committed a capital felony. Code Ann. § 24A-301 (b). Noncapital felony cases may be transferred to the superior court under circumstances prescribed by the Juvenile Code. See Code Ann. § 24A-2501. Under the Georgia Constitution, the superior court has jurisdiction to try any person who has reached the age of criminal responsibility[2] for a crime subjecting the offender to imprisonment. See Code Ann. § 2-3901.

A juvenile whose case is properly transferred to the superior court is subject to the criminal sanctions which may be imposed in that court. Thus, it is clear from the Georgia jurisdictional scheme and the nature of adjudicatory proceedings in juvenile court that an adjudication of guilt of a juvenile in superior court is a criminal adjudication.

Appellant was indicted for a capital felony and convicted of a non-capital felony in the superior court. This was a criminal adjudication, not an adjudication of delinquency. Appellant argues, however, that because he was committed to the Youth Development Center his commitment must be considered a civil adjudication of delinquency. Appellant interprets Code Ann. § 99-213 to require that any commitment to the Department of

---

[1(a)] Since March 25, 1975, this result is no longer possible. The General Assembly repealed the statute which permitted assignment of a delinquent to the Department of Corrections. See Ga. L. 1975, pp. 184, 185.

[2] Code Ann. § 26-701 provides age 13 as the current minimum age of criminal responsibility in Georgia.

Human Resources, Division of Children and Youth (for rehabilitation in a Youth Development Center), must be regarded as a civil commitment. This is incorrect, as children may be committed to the custody of the Division for Children and Youth by two methods. The first is as the result of an adjudication of delinquency in a juvenile court. See § 24A-2302 (d). The second method is by a judgment of the superior court upon conviction of a crime. See Code Ann. § 99-209 (a)(5). We disagree with appellant's interpretation of Code Ann. § 99-213 that any commitment to the Division for Children and Youth must be treated as a civil commitment. That section merely provides for the manner of treatment of delinquent children committed to the Division as delinquents, not of children who are committed to the Division after a criminal conviction. By law a delinquent child is one who is adjudged to be delinquent "under the provisions of the juvenile court statute." Code Ann. § 99-203 (q). Section 99-213 has no application to children under 17 years of age who are convicted of a felony in superior court. The Division of Children and Youth, except in specified cases, has custody of children under 17 years old who are convicted of crimes. See Code Ann. § 99-209 (a) (5) as amended. This Code section is discussed in the following section of this opinion. The General Assembly has expressed a statutory desire to provide separate rehabilitation and treatment for persons under 17 who are convicted of crimes but this does not change the criminal nature of the adjudication leading to their confinement. We conclude that appellant's conviction in Turner Superior Court was a criminal adjudication and not a civil adjudication of delinquency.

The next issues which must be examined relate to the length of appellant's sentence and the manner and place of confinement required by law in this case. We begin with a review of several Acts of the General Assembly dealing with the Division for Children and Youth. In 1969, the Children and Youth Act (Ga. L. 1963, p. 81) was amended to provide for the incarceration of misdemeanants and felons under age 17 and the Division was designated as the exclusive agency for their incarceration. Ga. L. 1969, pp. 996, 997. The Act was

again amended in 1972 to provide that the Division would be the exclusive agency "[f]or the acceptance and incarceration of all misdemeanants and felons under the age of 17 years; . . . [except those guilty of capital felonies who were to be sentenced into the custody of the Department of Corrections] . . . All other persons [meaning those convicted of non-capital felonies or misdemeanors] . . . shall be committed for an indefinite period of time to the custody of the Division for Children and Youth . . ." Ga. L. 1972, pp. 1251, 1252.

In 1973, the General Assembly amended the incarceration section again to provide that the Division is to be the exclusive agency "[f]or the acceptance and incarceration of all felons under the age of 17 years . . . [except those convicted of capital felonies]. All other persons under the age of 17 years and commencing on July 1, 1974, under the age of 18 found to be guilty or convicted, including a plea of guilty or of nolo contendere, of voluntary manslaughter, involuntary manslaughter, . . . aggravated assault . . . robbery . . . , or an attempt to commit any such offense, may, in the discretion of the court, be committed as youthful offenders as authorized in the Georgia Youthful Offender Act of 1972 (Ga. L. 1972, p. 592), or be committed for an indefinite period of time to the custody of the Division of Social Services of the State Department of Human Resources [formerly State Board for Children and Youth, see Ga. L. 1972, pp. 1046-47] . . . [effective date April 13, 1973.]" (Bracketed material added.) Ga. L. 1973, p. 563.

In 1974 this section was again amended by Ga. L. 1974, p. 1455 to provide that the division is to be the exclusive agency "[f]or the acceptance and incarceration of any child under the age of 17 years; provided, however, that any child who has previously been adjudged to have committed an act which is a felony if tried in a superior court, and who, on a second or subsequent occasion is convicted of a felony in a superior court may . . . be sentenced into the custody of the State Department of Offender Rehabilitation as otherwise provided by law or be committed as a youthful offender as authorized in the Georgia Youthful Offender Act of 1972 (Ga. L. 1972, p. 592); . . . [exception for capital felonies] . . ." Approved

April 2, 1974, effective July 1, 1974 (Code Ann. § 102-111).

When appellant was convicted, the jury sentencing statute, Ga. L. 1964, pp. 483, 484 was also in effect. The jury prescribed a two-year sentence for appellant. This sentence was never reduced to writing but was orally imposed by the presiding judge on April 19, 1974. On May 7, 1974, the judge committed appellant to the Department of Human Resources without specifying a term. Thereafter when the superior court judge, on December 11, 1974, transferred appellant from the Youth Development Center in Milledgeville to the Youthful Offender Division of the State Board of Corrections after appellant had become 17 years old, the order provided that he was "to be dealt with as provided by the Georgia Youthful Offender Act of 1972 (p. 592, Ga. L. 1972)." The Board of Corrections construes this sentence to be an indeterminate 0-6 year sentence. The Georgia Youthful Offender Act of 1972, Ga. L. 1972, pp. 592, 598[3] (Code Ann. § 77-346 (g) defines a "youthful offender" as an offender who is "17 but less than 25 years of age at the time of conviction." The court may upon conviction of a youthful offender of a felony sentence the offender to an indeterminate term of up to six years. By its terms, however, the Youthful Offender Act, unless made applicable by another statute, (e.g., Ga. L. 1973, p. 563) is inapplicable to persons who at the time of conviction are less than seventeen years of age.

The statute under which appellant was committed (Ga. L. 1973, p. 563) provides that the court in its discretion can commit a person under age 17 who has committed one of the listed offenses either under the Youthful Offender Act of 1972 *or* for an indefinite period of time to the Department of Human Resources. The trial court can select the second option, that is, commitment to the Department of Human Resources for an indefinite period of time. The jury-sentencing statute, which has now been repealed, provided that the jury prescribe a

---

[3]This Act was subsequently amended by Ga. L. 1975, pp. 900, 905.

determinable sentence upon conviction of a crime not punishable by life imprisonment. Ga. L. 1964, pp. 483, 484. When appellant was convicted, two apparently contradictory statutes existed, to wit, Ga. L. 1964, p. 483, and Ga. L. 1973, p. 563. Thus appellant argues that the maximum sentence he can be required to serve is the two-year sentence announced by the jury and orally imposed by the judge.

We disagree with the contention that the jury sentence of two years was binding on the trial judge. The 1973 enactment by the General Assembly indicated the lawmakers intended to have felons under the age of 17 sentenced by the judge for whatever period of time he felt was in the interests of rehabilitating the child. As to these young offenders, the jury-sentencing statute was impliedly repealed. See *Moore v. Baldwin County*, 209 Ga. 541, 545 (74 SE2d 449) (1953). The maximum period of time we think the indeterminate sentence could extend is that specified in the Criminal Code section defining the offense. In the case of voluntary manslaughter, the maximum sentence is twenty years (Code Ann. § 26-1102).

Consistent with our interpretation that the judge could prescribe an indefinite term, the legislature enacted Code Ann. § 99-222 (Ga. L. 1969, pp. 996-997) concerning the continuing jurisdiction of the superior court over a person sentenced and committed under § 99-209. That section provides: "Any final order of judgment by the court in the case of any child incarcerated according to subsection (5) of section 99-209 shall be subject to such modification from time to time as the court may consider to be for the welfare of such child. No commitment of any child to any institution or other custodial agency shall deprive the court of jurisdiction to change the form of the commitment or transfer the custody of said child to some other institution or agency on such conditions as the court may see fit to impose, the duty being constant upon the court to give to all children subject to its jurisdiction such oversight and control in the premises as will be conducive to the welfare of said child and the best interests of the State: . . ."

However, in appellant's case the judge chose to take

the jury's decision and orally sentenced Carrindine to two years.[4] Of course the law does not recognize an oral sentence as a judgment of the court. See *Ware v. State,* 128 Ga. App. 407, 409 (196 SE2d 896) (1973). However, because appellant spent time in jail under this sentence, the trial court could not increase this sentence to more than two years. See, e.g.,*Inman v. State,* 124 Ga. App. 190, 192 (183 SE2d 413) (1971). In summary we find that appellant received a criminal conviction at his trial in superior court and a two-year sentence therefor. In view of this, the double jeopardy problem appellant urges us to find under Breed v. Jones, 95 SC 1779 (1975) is not present. However, further problems relating to appellant's confinement must be confronted and these will be treated below.

The state argues that Code Ann. § 99-209 (a)(5) is a limitation on the authority of the Department of Human Resources to retain custody of children over the age of 17. That section provides that the Division of Children and Youth is the "exclusive state agency for the acceptance and incarceration of all felons under the age of 17 years." Ga. L. 1973, p. 563.[5] The Attorney General of Georgia has written an opinion which states that the Department of Human Resources' responsibility for these children ends when they reach the age of 17. The Attorney General has declared at that time they must either be released or transferred to the Department of Offender Rehabilitation under a court order. (See A.G. opinion 74-139 (October 9, 1974)). In 1975, this is in fact what the legislature provided in the Youthful Offender Act: "This authority to commit an offender to the custody of the division shall also apply

---

[4]By analogy, after the judge-sentencing provision was enacted there was at least one case in which the jury had pronounced a term of years. This court has held that it can be harmless error. See, e.g., *Harris v. State,* 234 Ga. 871, 873 (218 SE2d 583) (1975). Cf. *McNeese v. State,* 236 Ga. 26.

[5]This section was changed in Ga. L. 1974, p. 1455 to "for the acceptance and incarceration of any child under the age of 17 years."

to an offender, originally committed to the Department of Human Resources, who must be transferred to the Department of Corrections by the court, under the power granted the court in Ga. L. 1969, pp. 886 [sic 996], 997 upon an offender's reaching the age of 17." Ga. L. 1975, pp. 900, 906 (Code Ann. § 77-359(b) (1) (ii)). This new section of the Youthful Offender Act seems both to accept the view that the Department of Human Resources loses the right to custody at age 17 and that the most suitable place of incarceration is in the Youthful Offender Division of the Department of Offender Rehabilitation.

The problem we confront results from a statutory silence in the pre-1975 legislative scheme providing for the incarceration of felons under the age of 17 who are committed to the Department of Human Resources and then who subsequently become 17 years of age. The problem would not have arisen if appellant's initial commitment order had specified where appellant was to be transferred at age 17. However, appellant was transferred, after he reached age 17, from a facility of the Department of Human Resources to a Youthful Offender Division facility by a court order without a hearing.

Appellant argues that this procedure deprived him of minimal due process procedural safeguards. Under some circumstances, a hearing would be required to satisfy due process. Whether due process requires notice and another hearing depends on whether the court has to make an additional finding (other than those required for guilt) in order to change the nature of the incarceration. In Specht v. Patterson, 386 U. S. 605, in order to sentence the defendant under a special sex offender statute, it was found necessary to have both convictions of a sex offense and the presence of other listed factors. The finding that those factors were present was required to be at a hearing conducted consistent with procedural due process. See also Baxtrom v. Herold, 383 U. S. 107 (1965).

In an instructive juvenile case the defendant was first adjudicated delinquent. Later he was found to be incorrigible, and was sent from the juvenile facility to the Men's Correctional Center. The finding that he was incorrigible should have been made with procedural safeguards under that decision. The court indicated that the key to

analyzing whether the transfer was administrative or substantive was whether the transfer was to a functionally distinct institution with different facilities and purposes. See Shone v. Maine, 406 F2d 844 (1st Cir. 1969) vacated as moot 396 U. S. 6 (1971). See also Lokey v. Richardson, (9th Cir. 12-9-75) 18 Cr. L. Rep. 2322. The question we decide is whether appellant's transfer was to a "functionally different" institution or was just an administrative change in his place of incarceration.

Incarceration in a facility of the Department of Human Resources after conviction for a felony and incarceration in the Youthful Offender program have similar treatment, vocational and rehabilitative objectives. The existence of both programs indicates the desire of the General Assembly to separate younger prisoners who have a possibility of benefiting from these special programs when they are segregated from older and more experienced prisoners. But see *Woods v. State,* 233 Ga. 347, 350 (211 SE2d 300) (1974). The General Assembly seems to have recognized this approach and clarified this aspect of the treatment of younger felons by its enactment of Ga. L. 1975, pp. 900, 906. Except for the Youthful Offender facilities, all young felons could be incarcerated in regular adult correctional institutions and commingled with older prisoners, a result that is neither sagacious nor desirable. Based on the present record we do not agree that the confinement facilities of the Department of Human Resources are functionally different from the facilities of the Youthful Offender Division. Thus appellant's transfer was an administrative transfer from one institution to another which did not require a new court hearing. We hold that appellant is in the lawful custody of the Youthful Offender Division serving the remainder of his sentence of two years for his conviction of the crime of voluntary manslaughter in the Superior Court of Turner County.

*Judgment affirmed in part; reversed in part. All the Justices concur.*

ARGUED NOVEMBER 10, 1975 — DECIDED FEBRUARY 2, 1976.

James C. Bonner, Jr., for appellant.
Arthur K. Bolton, Attorney General, Harrison Kohler, for appellee.