## A09A1974. GETER v. THE STATE.
### (685 SE2d 342)

JOHNSON, Presiding Judge.

On November 11, 2008, the Superior Court of Hall County revoked two years of the probated sentence being served by James Geter. Geter appeals, claiming that the trial court erred in allowing his spouse to testify without informing her of her marital privilege pursuant to OCGA §§ 24-9-21 and 24-9-23 and that insufficient evidence supported the state's claim that he violated a condition of his probation. We granted Geter's application for discretionary review and affirm for the reasons set forth below.

Pursuant to OCGA § 42-8-34.1 (b), a court may revoke any part of a probated sentence if the evidence produced at the revocation hearing establishes a violation of the conditions of probation by a preponderance of the evidence. "This court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court."[1] "[T]he quantum of proof sufficient to justify a revocation of probation is less than that required to sustain conviction in the first instance. Thus, in such proceeding it is unnecessary that the evidence support the findings beyond a reasonable doubt."[2]

Here, Geter was convicted of statutory rape in 2002 and sentenced to a twenty-year term, with three years to serve in prison and

---

[12] (Footnote omitted.) *Hinds*, supra at 82 (1) (b).

[1] (Citation and punctuation omitted.) *Dugger v. State*, 260 Ga. App. 843 (581 SE2d 655) (2003).

[2] (Citation and punctuation omitted.) Id. at 848 (3).

the remainder to be served on probation. One of the conditions of Geter's probated sentence was that he not violate the criminal laws of any governmental unit.

After Geter was released from prison, he began living with Jeanette Smith, and they married in 2007. On June 15, 2008, Geter's wife called 911 when Geter threatened to kill her after she cooked some food that he did not want to eat. Geter's wife testified that Geter "got mad," pushed a television onto the floor, and threatened to shoot her with his 9-millimeter pistol. She also testified, however, that she did not want Geter to be prosecuted, that she never thought Geter would actually shoot her, and that Geter did not own a handgun.

The police officer who responded to Jeanette Geter's call testified that when he arrived at the scene, Mrs. Geter was outside the home and appeared upset and angry. She told him that she thought her husband had a mental illness and might have a handgun with him inside the house. Mrs. Geter told the officer that Geter threatened to shoot her in the head with the handgun and empty the rest of the clips from his gun into her body. After Geter's sister arrived and removed Geter from the home, the officer testified that Jeanette Geter was "very glad" that Geter had left.

1. We first address Geter's claim that the trial court erred in failing to inform his wife of her rights pursuant to the marital privilege. This court has previously held that a trial court has no obligation to inform a defendant's spouse of the existence of the marital privilege.[3] However, the Supreme Court of Georgia recently found that a spouse could not have waived her marital privilege under OCGA § 24-9-23 because she had not been informed of its existence.[4] Here, unlike in *Webb*, the evidence indicated that Geter's wife was informed by defense counsel of her rights under the marital privilege, and that she did not assert the privilege even after defense counsel voiced her objections to the testimony in her presence. Because Geter's wife was aware of the privilege but never asserted it to the trial court, we must assume that she waived her right not to testify as a result of her marriage to Geter.[5]

2. Geter also claims that the evidence was insufficient to support the state's claim that he violated a condition of his probated sentence by committing a crime while he was on probation. Here, the state asserted that Geter had made a terroristic threat pursuant to

---

[3] *Ingram v. State*, 262 Ga. App. 304, 307 (4) (a) (585 SE2d 211) (2003) ("where a spouse takes the stand and testifies voluntarily, it is presumed that she has waived the marital privilege").

[4] *Webb v. State*, 284 Ga. 122, 127 (5) (663 SE2d 690) (2008).

[5] See *Smith v. State*, 254 Ga. App. 107, 108 (1) (561 SE2d 232) (2002).

OCGA § 16-11-37 (a). That statute provides: "[a] person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence . . . with the purpose of terrorizing another."[6] However, the statute also provides that "[n]o person shall be convicted [of the offense] on the uncorroborated testimony of the party to whom the threat is communicated."[7]

If properly corroborated, Geter's statement that he would shoot his wife in the head with his 9-millimeter pistol and empty the rest of the clips into her body would be sufficient to show that Geter threatened his wife with a crime of violence with the purpose of terrorizing her.[8] Here, the testimony of Geter's wife was corroborated despite the fact that she was the only one who heard the threats, and despite the fact that she minimized their significance in her testimony.

> Slight circumstances may provide sufficient corroborating evidence. The quantum of corroboration need not in itself be sufficient evidence, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged. Corroboration can consist of the victim's demeanor after the threat is communicated.[9]

The police officer who responded to Jeanette Geter's 911 call testified that she was crying and upset because of the incident, thereby corroborating her testimony regarding the actual threat made. As a result, the evidence presented would have been sufficient to convict Geter of making a terroristic threat,[10] and it was more than sufficient to justify the revocation of a portion of Geter's probated sentence.[11]

*Judgment affirmed. Ellington and Mikell, JJ., concur.*

## DECIDED OCTOBER 7, 2009.

*Anne L. Watson*, for appellant.

---

[6] Id.

[7] Id.

[8] *Hall v. State*, 292 Ga. App. 544, 548 (2) (664 SE2d 882) (2008).

[9] (Citations and punctuation omitted.) Id.

[10] Id.

[11] See *Mafnas v. State*, 149 Ga. App. 286, 288 (3) (254 SE2d 409) (1979).

*Lee Darragh, District Attorney, Lindsay H. Burton, Assistant District Attorney*, for appellee.